# MARTEL v CONSTANNA SHIPPING AGENCY, INC.
## Case No. 84-36214 CA 05
### Eleventh Judicial Circuit, Dade County
### October 31, 1986

## APPEARANCES OF COUNSEL

**J. Jay Simons** for plaintiffs.
**Robert Wainger** for defendant.

## OPINION OF THE COURT

JON I. GORDON, Circuit Judge.

THIS CAUSE HAVING COME on to be heard purusant to a Pre-

Trial Conference and the Court being fully advised in the premises, it is

ORDERED AND ADJUDGED that Plaintiffs take nothing by this action and Defendants go hence without day, and further, the Court finds that: The Plaintiff, Doris Martel, has sued the Defendants and asserted that they were negligent in that they permitted the ladder, which descends into ship's swimming pool, to become wet thus becoming slippery—and thereby causing her to fall, fracturing her arm, suffering nerve impairment and ultimately requiring breast reduction surgery.

By Order dated March 17, 1986, this cause was originally scheduled for *jury trial* for the two week period commencing August 25, 1986. *Pre-Trial Conference* and *Call of the Calendar* was scheduled for August 21, 1986 at 1:30 P.M.. All Court appointed examinations were to have been completed at least thirty days prior to the Monday of the scheduled trial week; and further, all other discovery proceedings and pre-trial motions were to have been completed at least ten days prior thereto. On the Defendant's motion, the Court, by its order of May 21, 1986, directed the Plaintiff to submit to both an orthopedic and neurologic examination. The orthopedic examination was to be performed by Dr. Joseph Kalbac; the neurologic examination by Dr. Basil Yates. The order further specifically directed the experts to "make such examinations and tests as may be necessary to ascertain the extent of the injuries. . ."

By its order of June 19,1986, this Court granted Defendant's motion for a continuance and rescheduled the trial for the two week period commencing September 22, 1986. The time limitations set forth in the original trial order applied to the new trial date.

On July 23, 1986, Defendant served its motions for sanctions reference the Court ordered orthopedic examination. The Defendant asserted that the Plaintiff appeared at Dr. Kalbac's office on July 21, 1986, but that she refused to permit the Doctor to take current x-rays to evaluate her present condition. Thereupon, in light of the Plaintiff's refusal to permit the requested testing, the Doctor was unable to perform the ordered examination and the Plaintiff left his office.

In apparent response to the Defendant's motion, the Plaintiff on July 31, 1986, filed motion ostensibly for "clarification." Therein she asserted unequivocally, that absent a *medical emergency*, she would not subject herself to further x-rays. The motion was supported by Plaintiff's affidavit together with a letter from her chiropractic physician. By its order of August 22, 1986, the Court reserved ruling on the motion

50

in order to permit the parties an opportunity to supplement the record regarding the real or imaginary medical consequences of further x-rays. Dr. Kalbac attested that he was unable to perform the Court ordered examination in light of the Plaintiff's refusal to permit current x-rays. The Plaintiffs filed a letter from Dr. Samuel P. Leone, M.D. asserting that further x-rays would be hazardous to the Plaintiff's health.

By its order of September 10, 1986, the Court granted Defendant's motion and struck Plaintiff's claim for orthopedic injuries and damages resulting therefrom. The Court reasoned that if the Plaintiff refused to undergo a meaningful orthopedic examination because she was of the opinion that the necessary x-ray testing would be injurious to her health, it would be unfair to the Defendant for the Plaintiff to claim such damages. In order to remedy this otherwise inequitable situation, it was unnecessary for the Court to find that the Plaintiff had willfully or wantonly disobeyed its order. Under the circumstances, she simply could not receive an advantage because of the unwillingness to participate in meaningful discovery—no matter how good her reason.

On September 9, 1986, Evelyn Merchant, Esq. on behalf of the Plaintiff again moved for "Clarification and/or Reconsideration." Paragraph two of the motion represented, that at the Court ordered examination the Plaintiff had presented to Dr. Kalbac "all previous x-rays taken with regard to her physical complaints. . ." Likewise, Ms. Merchant on September 11, 1986, at the hearing on the above motion, again orally represented that the Plaintiff had presented her x-rays to Dr. Kalbac. Contrary to paragraph four of her motion—that the Plaintiff shall refrain "from submitting to future x-rays except under *emergency circumstances*—Ms. Merchant argued at the September 11, 1986 hearing that the Plaintiff should now be given the *option* to comply with the prior Court order. The law suit, though important, is certainly not a medical emergency. The Court believed and relied upon Plaintiff's earlier representations that she would not submit to further x-rays barring a medical emergency. Unhappy with the consequences of that decision, the Plaintiff then changed her position! The Plaintiff's first position was unequivocal—no x-rays, barring a medical emergency. Even at the hearing, however, counsel could not affirmatively represent that if given the *option*, the Plaintiff would in fact submit to further x-rays. By its order of September 15, 1986, the Court denied Defendant's motion.

On September 17, 1986, Ms. Merchant, on behalf of the Plaintiff, served a *Motion to Vacate Order filed September 15, 1986* together with Memorandum of Law. Ms. Merchant again represented in paragraph five of said motion that "the Plaintiff in this matter presented at

Dr. Kalbac's office with her prior x-rays in hand, Dr. Kalbac, without examining any of Plaintiff's x-rays, requested that Plaintiff submit to additional x-rays." Similar representations are included in paragraphs 12, 13, 15 of the motion. Moreover, paragraph 13 of the motion affirms that the Court was previously advised these purported x-rays were "current diagnostic x-rays." At the hearing on September 18, 1986, Mr. Tobin, on behalf of the Plaintiff, likewise represents that the Plaintiff presented x-rays to Dr. Kalbac which were as recent as *four months* old. Counsel for the Plaintiff, even on that date—three days prior to the Monday of the two week trial period—could not represent that his client would in fact submit to further x-rays, but only that she wanted the option to decide at some future date.

Interestingly, the Plaintiff for the first time took exception to that portion of the Court's order of May 1, 1986 which permitted the physicians to "test as may be necessary." The Plaintiff asserted that testing was not contemplated by Rule 1.360 of the Fla. R. C. P. Contrary to the Plaintiff's position, the Court ruled that it had authority to order reasonable tests, but that contempt was unavailable to enforce such an order. *see* 1.380(b)(2)(D) of the *Fla. R. C. P..*

Further, in her *Motion to Vacate Order filed September 15, 1986,* Plaintiff asserted that the Court had improperly expanded its order of September 10, 1986 by now excluding any evidence of *physical injuries* rather than merely excluding claims relating to *orthopedic injuries.* Based upon Plaintiff's representation that she had other than orthopedic related physical injuries, the Court granted Plaintiff's Motion for Clarification and re-affirmed the September 10, 1986.

Finally, Mr. Tobin, on behalf of the Plaintiff orally moved to strike Defendant's neurological testimony at time of trial. The basis for his motion was that the examination by Dr. Yates had not occurred within the time schedule set forth in the order setting the cause for trial—thirty days prior to the Monday of the two week period. In response, counsel for the Defendant presented the Court with a copy of a letter addressed to Mr. Simons, Mr. Tobin's partner, dated August 5, 1986, which reflect that the schedule examination of the Plaintiff had been postponed at the request of the Plaintiff due to her inability to procure her recent x-rays. Mr. Tobin did not deny knowledge of the agreement; the Defendant had accommodated the Plaintiff who had agreed not to object to the date of the examination—no good deed goes unpunished. Ore tenus motion to strike was denied.

On September 26, 1986, Jay Simons on behalf of the Plaintiff filed a Motion to Disqualify. The motion had attached to it what purported to

52

be a copy of a portion of a transcript of the September 11, 1986 hearing. The Plaintiff asserted that the transcript evidenced a slur purportedly made by the Court against Broward County lawyers. The parties had been directed to appear for trial Monday, September 29, 1986; in the interest of judicial economy, the Court scheduled an immediate hearing on the Motion to Disqualify. Mr. Simons represented that neither Ms. Merchant nor Mr. Tobin, who had been present at the September 11, 1986 hearing, were available. Ms. Merchant was in Europe, Mr. Tobin was "wandering around Miami somewhere." The court reporter who attended the hearing on September 11, 1986 was present and testified that the purported transcript was in error and not in conformity to her notes. Rather than casting aspersion on Broward County attorneys, the Court had strongly admonished Miami defense counsel from attempting to advance his argument by attacking what he perceived to be a tactic employed by Broward County lawyers. Mr. Wainger, counsel for Defendants, affirmed that the Court, on September 11, 1986, had correctly admonished him for such improper argument. No other conclusion could have reasonably been drawn,—certainly by those present and notwithstanding the erroneous transcript. Unhappy with prior Court rulings, the Defendants (sic) Plaintiffs transparently had attempted to exploit an obvious transcription error. The motion was orally denied, although Mr. Simons indicated that he would nevertheless seek appellate review of the Court's ruling on the basis that itnever should have conducted a hearing to discover the inaccuracies in the transcript. On Monday, September 29, 1986, Mr. Simons apologized to the Court for the accusation reference Broward County attorneys and subsequently moved to withdraw his motion for disqualification which by order dated October 3, 1986 was granted.

Mr. Simons appeared as directed on behalf of the Plaintiff September 29, 1986 for trial and for a continuation of the Pre-Trial Conference. Mr. Simons against represented that his client had presented the x-rays, approximately four months old, to the Court appointed physician —but that the Doctor wanted to take his own.

Contrary to the position taken by Ms. Merchant and Mr. Tobin at the September 18, 1986 hearing on Plaintiff's *Motion to Vacate Order filed September 15, 1986*, Mr. Simons conceded that all Plaintiff's injuries were either orthopedic or orthopedic related—that they could not be differentiated. In light of the prior orders excluding evidence of orthopedic injuries and damages resulting therefrom, counsel for the Plaintiff announced that he had no other admissible evidence of damages and therefore all counsel agreed that, under the circum-

stances, the Court should enter Judgment in favor of the Defendants and against the Plaintiff—and let the parties pursue their appellate remedies.

At the conclusion of the Conference, counsel for the Defendant, announced that he was uncomfortable with a representation that he had included in his original motion for sanctions dealing with the purpoted age of the x-rays thought to have been presented by the Plaintiff to Dr. Kalbac. Mr. Wainger stated that Ms. Merchant had furnished him with the original information and that he had accepted it at face value. Earlier in the proceedings, Mr. Wainger had made similar statements. Now, he had cause to question the information and he wanted to so advise the Court. In response to Mr. Wainger's concern, the Court invited the Plaintiff to testify in order to clarify the issues. Most interestingly, the Plaintiff testified that upon notice of her appointment to be examined by Dr. Kalbac she became concerned about the necessity of submitting to further x-rays; that she anticipated that the Doctor would need x-rays to properly examine her; that she advised her attorney prior to her appointment of her reluctance to submit to further x-rays, that the orthopedic x-rays in question were not current, but in excess of one year old; and that, in any event, she did not present her x-rays to Dr. Kalbac.

Additionally, in response to whether the Plaintiff would have actually submitted to further x-rays, she testified as follows:

MS. MARTEL: If I realized what it would have done to this case, apparently I would have had to take my chances. Then *somebody would have been responsible* if I have over-radiation, because I have problems now. (emphasis added)

THE COURT: Who would you wish to hold responsible, the doctor who gave it to you?

MR. SIMONS: Certainly not the Court.

MS. MARTEL: I don't know.

THE COURT: You're saying I would have done it if it helped my cause, but if it hurt me, I would hold somebody responsible? I guess you would look back to the doctor who gave you the x-rays?

MS. MARTEL: I don't know. (*see* pp. 121, 122 of transcript of hearing September 29, 1986)

All the prior representations by Plaintiff's counsel regarding the presentation of x-rays to Dr. Kalbac and the age of the x-rays were false. In order to get to the bottom of this matter, the Court by its order of October 3, 1986 directed counsel for the parties to set forth in

54

a pleading any assertions of misrepresentations by opposing counsel, together with an opportunity to respond thereto. In compliance therewith, counsel for the Defendants on October 16, 1986 filed their pleading setting forth in detail the misrepresentations attributed to Plaintiff's counsel together with appropriate citations to the record. Ms. Merchant, on October 17, 1986, served her reply in which she lamely suggested that she had "found no material representations on the part of any of the parties in this cause;" and that the record was "replete with mischaracterizations of Plaintiff's position and argument." Counsel failed to cite any portion of the record in support of her position. Thereafter, on October 24, 1986, Ms. Merchant filed an additional pleading the gravamen of which asserted:

(1) that the misrepresentations regarding the presentation and the age of the questioned x-rays were not material;

(2) that the Court was responsible for the Plaintiff's misrepresentations;

(3) that the Defendant was responsible for the Plaintiff's misrepresentations; and

(4) that the counsel takes exception to the Courts' efforts to investigate purported representations.

This Court has expended an exorbitant amount of time and energy on this matter. Prior to the scheduled orthopedic appointment, the Plaintiff knew full well what was expected of her. She conveyed her misgiving to her attorney. Her counsel never filed any motion for protection or clarification *prior* thereto. Rather, Plaintiff elected to intentionally violate the Court's order and as a result, frustrate the Court ordered examination. Her Motion for Clarification did not seek "clarification" at all. Rather, it *advised* the Court that the Plaintiff did not intend to submit to further x-ray testing—barring a medical emergency. Having intentionally violated the Court's order, the Plaintiff, in response to Defendant's motion for sanctions, sought after the fact to discover her down side. Plaintiff's motion was neither timely nor made in good faith. Upon learning of the consequences of her actions, has position changed—now she wanted the "option" to comply. The Plaintiff did not say that she *would* comply, but only that she now wanted an "option" to comply! The Plaintiff's veiled threat, "to hold someone responsible" in the event she elects to submit to further x-rays for the benefit of her suit is intolerable. How can the Court reasonably be expected to progress its matters under 'such circumstances?

The conduct of Plaintiff's counsel as a whole in this case has been

**55**

deplorable. They knew or should have known that the representations made to the Court were false and misleading; they reneged on stipulations with opposing counsel; they filed and argued matters before the Court which they knew or should have known were meritless; they evidenced an attitude of "win" at any cost. In so doing, they, together with the Plaintiff, placed an intolerable burden on the Court system. The Defendants have been prejudiced by such misconduct to the degree that it would be unfair for them to proceed with the case. For the above reasons, in addition to those expressed at the Pre-Trial Conference on September 29, 1986, it is

ADJUDGED that the Plaintiffs take nothing by this action and the Defendants go hence without day.

DONE AND ORDERED in Chambers, Miami, Dade County, Florida, this 31st day of October, 1986.